UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **KATHY HENLEY,**<br><br>*Plaintiff*,<br><br>v.<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., OPPORTUNITY FINANCIAL, LLC,** *and* **TRANS UNION LLC,**<br><br>*Defendants*. | Case No.: 8:26-cv-544<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Kathy Henley ("Ms. Henley"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, Experian Information Solutions, Inc. ("Experian"), Opportunity Financial, LLC, doing business as OppLoans ("OppLoans"), and Trans Union LLC ("Trans Union") (collectively with Experian and OppLoans, the "Defendants"), stating as follows:

**PRELIMINARY STATEMENT**

1.     This is an action against all Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and against OppLoans only for breach of contract.

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction for Plaintiff's FCRA claims arises under FCRA, 15 U.S.C. § 1681p, and 18 U.S.C. § 1331, as the FCRA is a federal statute.

3. This Court has supplemental jurisdiction over Plaintiff's breach of contract claim under 18 U.S.C. § 1367.

4. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida, Tampa Division, because the acts complained of were committed and / or caused within Hillsborough County.

## PARTIES

### Ms. Henley

6. Ms. Henley is a natural person who at all times relevant resided in the city of Tampa, Hillsborough County, Florida.

7. Ms. Henley is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Experian and Trans Union

8. Experian is an Ohio corporation with a principal business address of 475 Anton Blvd., Costa Mesa CA 92626.

9. Experian is registered to conduct business in Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd. Plantation, FL 33324.

10. Trans Union is an Illinois limited liability company with a principal address of 555 West Adams Street, Chicago, IL 60661.

11. Trans Union is registered to conduct business in Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

12. Experian and Trans Union are "Consumer Credit Reporting Agencies" ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, they regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

**OppLoans**

13. OppLoans is a Delaware limited liability company with a principal business address of 130 E. Randolph St., Suite 3400, Chicago, IL 60601.

14. OppLoans is registered to conduct business in the State of Florida, where its registered agent is Cogency Global, Inc., 115 N. Calhoun St., Suite 4, Tallahassee, FL 32301.

**FACTUAL ALLEGATIONS**

**OppLoans' Loans to Plaintiff**

15. Beginning around October 3, 2022 and continuing through September 10, 2024, the online lending platform OppLoans made a series of six short-term, unsecured personal loans to Ms. Henley, each in the principal amount of $1,300 (the

"Loans").

16. The terms of the Loans were virtually identical, and the interest rates assessed were between 159.26% and 159.56% annually.

17. Florida caps interest rates at 18% per year, although it is possible to charge up to 36% with the appropriate license.

18. Shortly after making each loan, OppLoans started reporting payment and balance history to Experian and Trans Union, two of the largest CRAs in the nation.

19. OppLoans' reporting of payment and balance information to the CRAs essentially held Ms. Henley's credit reports and scores hostage – if she failed to pay the unlawful interest assessed by OppLoans, OppLoans would destroy her credit scores.

20. In late July 2025, upon procuring counsel and learning the interest assessed by OppLoans is illegal in Florida, Ms. Henley notified OppLoans of her intent to initiate arbitration against OppLoans and its bank "partner," Capital Community Bank ("CCB"), alleging the making and collecting of the Loans violated the CRCPA, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), and the FCCPA.

21. As of September 26, 2025, Ms. Henley, OppLoans, and CCB entered into a contract whereby OppLoans and CCB agreed to instruct the CRAs to delete any tradelines previously reported regarding the Loans, within 30 days of receipt of the

signed contract from Ms. Henley and agreed to reduce the outstanding balance of the Loans to $0.[1]

22. Ms. Henley returned the signed contract to OppLoans and CCB, through counsel, on or about September 17, 2025.

23. Despite receiving the signed agreement back from Ms. Henley, OppLoans failed to request deletion of its tradeline and continued to report a past due balance of $1,759 to the CRAs each month, breaching its contract with Ms. Henley.

### Ms. Henley's November 2025 Disputes

24. On or about October 20, 2025, Ms. Henley reviewed her Experian and Trans Union credit reports and learned the half-dozen OppLoans tradelines were still reporting to both CRAs, with one tradeline indicating Ms. Henley had a severely past due balance of $1,759.

25. Ms. Henley thereafter disputed the OppLoans tradeline concerning the allegedly-past due Loan to Experian and Trans Union, stating the balance had been reduced to $0 and the account data should be deleted because of a prior agreement with OppLoans.

26. Neither Experian nor Trans Union made any meaningful, independent investigation of the disputes.

---

[1] Ms. Henley is in possession of the full contract and can file it under seal as necessary, as the contract contains a confidentiality provision.

27. Instead, the automated systems of Experian and Trans Union each separately Automated Consumer Dispute Verification ("ACDV") requests, which were delivered to OppLoans through a system known as e-OSCAR.

28. Upon receipt of the ACDVs, OppLoans was placed on notice of Ms. Henley's disputes.

29. As notice of dispute was received from a CRA, OppLoans was thereafter required by the FCRA to make a reasonable investigation into the dispute. 15 U.S.C. § 1681s-2(b).

30. OppLoans responded to the ACDVs, certifying to Experian and Trans Union that its information had been verified as accurate and should remain reporting, including the purported past due balance.

31. OppLoans thus failed to conduct a reasonable investigation into Ms. Henley's disputes, as any reasonable investigation would have determined the tradeline should be deleted based on its prior contract with Ms. Henley, or at the very least, updated to reflect a $0 balance.

32. OppLoans did not so much as update its reporting to indicate the $1,759 balance claimed owed was "disputed by consumer."

### Ms. Henley's Subsequent Disputes

33. On or about December 15, 2025, Ms. Henley again disputed the OppLoans tradeline concerning the allegedly-past due Loan to Experian, stating the account should be deleted because of a prior agreement with OppLoans.

34. On or about December 19, 2025, Ms. Henley again disputed the OppLoans tradeline concerning the allegedly-past due Loan to Trans Union, stating the account should be deleted because of a prior agreement with OppLoans.

35. Ms. Henley uploaded the portion of the contract evidencing OppLoans' agreement to delete and waive the balance with her disputes.

36. Upon receipt of this second round of disputes, Experian and Trans Union once again failed to make any independent investigation and relied on their automated systems to initiate ACDV requests, which were delivered to OppLoans through e-OSCAR.

37. Once again, upon receipt of the ACDVs, OppLoans was placed on notice of Ms. Henley's second round of disputes.

38. As before, OppLoans responded to the ACDVs that the account tradeline was reporting accurately and should remain reporting.

39. OppLoans thus failed to conduct a reasonable investigation into Ms. Henley's December 2025 disputes, as any reasonable investigation would have determined the tradeline should be deleted based on its prior contract with Ms. Henley.

40. A third round of disputes were submitted to Experian in January 2026, resulting in the same: the Experian made no investigation of its own, and sent OppLoans another ACDV.

41. OppLoans received notice of Ms. Henley's dispute from Experian but once again verified its reporting as accurate, confirmed $1,759 was still past due, failed

to update its reporting to indicate the balance was disputed, and failed to request deletion as it was contractually obligated to do.

### Experian and Trans Union Make Unreasonable Investigations

42. Upon receipt of Ms. Henley's disputes, Experian and Trans Union were required to make a reasonable investigation of their own into her dispute and report the results of the investigation back to her within 30 days. 15 U.S.C. § 1681i(a)(1)(A).

43. Ms. Henley's disputes were readily and objectively verifiable by Experian and Trans Union, as a written contract exists which clearly and unequivocally indicates the Loan tradeline should be deleted, or at least report with a $0 balance.

44. As supporting evidence to her disputes, Ms. Henley included a redacted version of the settlement agreement requiring OppLoans to waive any outstanding balance and delete its tradelines.

45. However, rather than conducting independent investigations, Experian and Trans Union blindly accepted the ACDV responses from OppLoans and continued to incorporate the tradeline into Ms. Henley's credit reports.

46. Experian and Trans Union each determined that the electronic verification of the tradeline by OppLoans – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than the excerpt from a contract evidencing an agreement to delete.

47. Neither Experian, nor Trans Union called Ms. Henley, or otherwise contacted her in furtherance of their investigations, other than to provide her with confirmation of receipt and her dispute results.

48. Both Experian and Trans Union are aware that OppLoans is not a reliable source of information, especially as it pertains to disputes which allege OppLoans agreed, in writing, to delete a tradeline but then failed to actually do so.

49. Both Experian and Trans Union have been defendants in a significant number of FCRA lawsuits alleging OppLoans failed to delete an account after expressly promising to do so; in many cases, OppLoans continued to report a balance as well, after agreeing to discharge the debt. See, e.g., *Warren Davis vs. Opportunity Financial, Inc. and Trans Union, LLC*, case 2:22-cv-00599-JES-NPM, M.D. Fla., September 21, 2022 (small claims case removed to federal court by Trans Union; plaintiff alleged OppLoans failed to delete tradeline as agreed in settlement, and continued to report a balance owed); *Tanya Cason vs. Equifax Information Services, Experian Information Solutions, and Opportunity Financial LLC*, case 6:25-cv-02318-RBD-NWH, M.D. Fla, November 12, 2025 (state court case removed to federal court by Trans Union; plaintiff alleged OppLoans failed to delete tradeline as agreed in settlement, and continued to report a balance owed); *Marie Walker vs. Opportunity Financial and Experian Information Solutions,* Hillsborough County, Florida, Filing #235396906, November 7, 2025 (plaintiff alleged OppLoans failed to delete tradeline as agreed in settlement).

50. Because both Experian and Trans Union were aware OppLoans routinely failed to investigate disputes concerning its breach of agreement to delete previously reported tradelines, the CRAs had a heightened obligation to investigate Ms. Henley's disputes but failed to do so.

51. The fact OppLoans failed to report obviously disputed information as "disputed by consumer" likewise put the CRAs on notice that OppLoans was not capable of, or simply refused to, make a reasonable investigation.

52. Upon receipt of the ACDV responses, Experian and Trans Union both utilized an automated system which made rudimentary checks of tradeline data between what OppLoans had reported and the data contained in their own files on Ms. Henley, *e.g.,* her name, address, date of birth, and Social Security number.

53. This concluded their "investigations."

54. OppLoans provided no documents or other evidence to Experian and Trans Union which would have indicated that the Loan should still report.

55. Experian and Trans Union's complete reliance on OppLoans to verify disputed information without any additional investigation by the CRAs is inherently unreasonable, especially when a consumer states the underlying debt was waived in a settlement and that the tradeline should have been deleted per the agreement – with evidence confirming the consumer's narrative.

56. Experian and Trans Union's dispute resolution systems are heavily tilted in favor of their data furnishers, from whom they receive revenue monthly, and rest on the premise that the data furnishers are always right, until categorically proven wrong by the consumer.

57. As a result, consumers like Ms. Henley are left in a scenario where their only way to have their credit report corrected rests on their ability to disprove a negative.

58. Experian and Trans Union failed to conduct a reasonable investigation into any of Ms. Henley's disputes, as any reasonable investigation would have determined the tradeline should be deleted based on OppLoans' prior contract with Ms. Henley.

59. As the OppLoans tradeline continues to report in the credit files of Mr. Patteson maintained by Experian and Trans Union, Ms. Henley thus demands that Experian and Trans Union, upon receipt of this lawsuit, conduct and investigation and delete the OppLoans tradeline.

**Defendants' Errant Reporting Impacted Ms. Henley's Credit Scores**

60. Experian and Trans Union have furnished reports to third parties containing the OppLoans tradeline, after the account was settled and after notice of dispute from Ms. Henley.

61. For example, Experian sold a consumer report to Clarity Services, Inc., its subsidiary, for use by CreditNinja Lending, on December 9, 2025, in conjunction with Ms. Henley's application for a loan.

62. On information and belief, the data ultimately provided to Clarity included the errant OppLoans tradeline.

63. Ms. Henley's loan application was ultimately denied.

64. Trans Union sold a consumer report to Flexible Finance on January 2, 2026.

65. On information and belief, the data provided to Flexible Finance by Trans Union included the errant OppLoans tradeline.

66. Ms. Henley's application with Flexible Finance was also denied.

67. Experian and Trans Union's inclusion of the errant OppLoans tradeline caused significant damage to Ms. Henley's credit scores as the presence of the unpaid, actively-reporting charge-off had an extreme negative effect on Ms. Henley's credit scores.

68. Defendants' conduct described herein has caused Ms. Henley to suffer damage to her reputation, severe emotional distress, damage to her credit scores, and wasted time.

69. Ms. Henley has hired the aforementioned law firm to represent her in this matter and has assigned her right to attorney fees and costs to the firm.

## COUNT I
## OPPLOANS' WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681s-2(b)

70. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

71. OppLoans violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct reasonable investigations after receiving notices of dispute from Experian and Trans Union on at least three separate occasions per bureau, as any reasonable investigation would have concluded that the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

72. OppLoans did not so much as update its reporting to indicate the reporting was disputed by Ms. Henley.

73. OppLoans' conduct was a result of its regular policies and procedures,

which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

74. OppLoans' conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Henley.

75. Accordingly, pursuant to 15 U.S.C. § 1681n, OppLoans is liable to Ms. Henley for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against OppLoans, ordering:

a. The greater of statutory damages of $1,000 per incident or Ms. Henley's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT II
### OPPLOANS' NEGLIGENT VIOLATIONS OF THE FCRA
### 15 U.S.C. § 1681s-2(b)

**Pled in the Alternative to Count I**

76. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

77. OppLoans owed Ms. Henley a legal duty to conduct a reasonable investigation into her disputes after receiving notice of same from a CRA.

78. OppLoans breached this duty when it failed to conduct a reasonable investigation after receiving notice of dispute from a CRA, on at least six separate occasions, as reasonable investigations would have concluded that the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

79. OppLoans' breach violated 15 U.S.C. § 1681s-2(b).

80. Accordingly, pursuant to 15 U.S.C. § 1681o, OppLoans is liable to Ms. Henley for her actual damages, as well as reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against OppLoans, ordering:

a. Ms. Henley's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

### COUNT III
### EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA
### 15 U.S.C. § 1681i(a)(1)(A)

81. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

82. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least three separate disputes of the OppLoans tradeline by Ms. Henley, as any reasonable investigation would have concluded that

the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

83. Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

84. Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Henley.

85. Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Henley for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against Experian, ordering:

    a.    The greater of statutory damages of $1,000 per incident or Ms. Henley's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.    Such other relief that this Court deems just and proper

## COUNT IV
## <u>EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA</u>
## <u>15 U.S.C. § 1681i(a)(1)(A)</u>

### Pled in the Alternative to Count III

86. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

87. Experian owed Ms. Henley a legal duty to conduct a reasonable investigation into her disputes upon notice of same.

88. Experian breached this duty when it failed to conduct a reasonable investigation after receiving notice of dispute on at least three separate occasions, as reasonable investigations would have concluded that the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

89. Experian's breach violated 15 U.S.C. § 1681i(a)(1)(A).

90. Accordingly, pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Henley for her actual damages, as well as reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against Experian, ordering:

    a.    Ms. Henley's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.    Such other relief that this Court deems just and proper.

## COUNT V
## TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(1)(A)

91. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

92. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two separate disputes of the OppLoans tradeline by Ms. Henley, as any reasonable investigation would have concluded that the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

93. Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as non-disputed, when still disputed.

94. Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Henley.

95. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Henley for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

  a. The greater of statutory damages of $1,000 per incident or Ms. Henley's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT VI
## TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681i(a)(1)(A)

### Pled in the Alternative to Count V

96. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

97. Trans Union owed Ms. Henley a legal duty to conduct a reasonable investigation into her disputes upon notice of same.

98. Trans Union breached this duty when it failed to conduct a reasonable investigation after receiving notice of dispute on at least two separate occasions, as reasonable investigations would have concluded that the account could not be verified as accurate, as OppLoans had previously agreed to cease reporting it.

99. Trans Union's breach violated 15 U.S.C. § 1681i(a)(1)(A).

100. Accordingly, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Ms. Henley for her actual damages, as well as reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against Trans Union, ordering:

a.  Ms. Henley's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

### COUNT VII
### OPPLOANS' BREACH OF CONTRACT

101. Ms. Henley realleges Paragraphs 1 – 69 as if fully restated herein.

102. OppLoans entered into a contract with Ms. Henley in September 2025 whereby it agreed to cease collection of the Loans and to request deletion of the tradeline representing the Loans.

103. OppLoans did not request deletion of the tradelines, and instead verified it as reporting accurately on at least five separate occasions.

104. As a result, Ms. Henley was damaged as outline above, since Experian and Trans Union continued to include the Loans in consumer reports to Ms. Henley's creditors and potential creditors.

**WHEREFORE,** Ms. Henley respectfully requests this Honorable Court enter judgment against OppLoans, ordering:

a. Actual damages from OppLoans' breach of contract;

b. The attorney's fees and costs spent enforcing the agreement; and,

c. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Henley hereby demands a jury trial on all issues so triable.

Respectfully submitted on February 27, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*